## SCHUTZ v SCHUTZ

Case No. 77-14845 FC 14

Eleventh Judicial Circuit, Dade County

March 15, 1990

**OPINION OF THE COURT**

RICHARD YALE FEDER, Circuit Judge.

*ORDER ON FORMER HUSBAND'S MOTION FOR SANCTIONS*

This is neither the first nor probably the last, occasion that the Court has been required to draft a response to a problem without a solution; i.e., what does one do to effectuate compliance in the field of matrimonial law with orders of visitation or similar areas?

"Contempt" or "Change of Custody" would seem to be both appropriate and sufficient enforcers. But not always!

This case has already been before the Court multiple time since 1977 and has been the subject of appeals, counter-appeals and has been

pending before the Florida Supreme Court for over 15 months since oral argument in December, 1988.

Part of the original Order of this Successor Judge involving a post dissolution classic Parental Alienation situation was a permanent injunction barring removal of the children and a mandatory enjoining of the wife-custodian to instill in the children love and respect for the "hated" father.

In December, 1989, the day following an abbreviated visitation of the father to deliver a birthday gift, the Mother wrote a letter to the Father's counsel, her own attorney and the Court (but not to the Father) advising of her decision to move to Georgia which she did before the father's was delivered. The Father had not been told.

In Court, the Mother admitted she knew of this Court's Injunction, believed that the Court would not permit such move, had expended more than she could afford for attorneys and just moved, knowing she was violating a Court Order.

Her reasons, she claimed, were economic, i.e., she had not earned any money as a real estate salesperson for a year, had totally wiped out a bequest from her late father, her former husband (not the father) had been supporting her and had moved to Georgia with an ultimatum that he would no longer support her and the children in Miami. The Father was also delinquent in support payments, though motions to impose sanctions therefor had been filed and later withdrawn by the former wife.

There is no question that the Mother's conduct in moving to Georgia knowingly and intentionally in violation of this Court's long-standing prohibition is contumacious — but the Court must fashion the remedy that is not only protective of the Court, but that does not harm the children in the process.

It is a sad comment on the judicial process that a litigant should be afraid of a decision, when the Court exists to protect the innocent victims of dissolution — the children. Courts are jealous of their prerogatives, but all judges sitting on family matters have dedicated themselves to listening to problems and trying to protect those children.

The Court is also disturbed that the children have not been advised by their Mother of reinforcement of good qualities of the Father, but that matter is still before the Florida Supreme Court and must await another day.

Finally, the children now 14 and 16 were interviewed in the presence

154

of the parents and counsel. Whether Bloody Mary was right and "You have to be taught to Hate) ("South Pacific", by Rodgers & Hammerstein), those children *do* hate their Father. Neither time nor Court required visitation have altered, mollified or ameliorated this emotion.

Hopefully, additional time and the wisdom that maturity brings will restore the light of love and warmth of familiar affection to these children. Obviously this Court has been unsuccessful to date, but is neither deterred, dismayed nor discouraged.

To change custody would be too severe a punishment for the children and Life With Father for two recalcitrant, unwilling, spiteful teenagers would make the Father's life unbearable.

Considering all of the above, it is the considered Judgment of the Court that the Former Wife is held in contempt and is sentenced to ninety (90) days in jail, but sentence is suspended on the following conditions:

A) The children will receive therapy from a psychiatrist or psychologist at the Mother's expense to attempt to alter or change their feelings about their Father, and

B) The Court and counsel will receive bi-monthly reports from the said specialist advising both of their attendance at these sessions and their progress, and

C) The Mother will write to the Father (with copies to the Court and counsel) once per month advising of the children's activities, problems, joys and pleasures that occurred in the preceding month, enclosing report cards and, at least three times a year, snapshots of the children, and

D) The Mother will be required to work out weekend visitation of the Father with the children in Athens, Georgia whenever the Father can get to Athens, but no less than bi-monthly if the Father can make the necessary financial arrangements for transportation, lodging, etc., and

E) The Court grants permission to the Mother and Children to live in Athens, Georgia until further Order, but no further moves except to return to Miami will be permitted without *prior* court approval, and

F) The address and phone number of the children will be given to the Father and kept current.

DONE and ORDERED in Chambers at Miami, Dade County, Florida, this 15th day of March, 1990.